# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

JALONI McGHEE,

        Petitioner,

v.                                            Case No.:    3:18-cv-932-TJC-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____/

# ORDER

## I.    Status

Petitioner, Jaloni McGhee, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. (Doc. 1, Petition). He challenges a state court (Duval County, Florida) conviction and sentence for aggravated assault with a deadly weapon. Respondents oppose the Petition (Doc. 14, Response) and Petitioner has replied (Doc. 15, Reply). The case is ripe for review.

## II.    Background

This case arises from Petitioner's conviction for aggravated assault with a deadly weapon in Case No. 2012–CF–1747 (Fla. 4th Cir. Ct.).[1] On March 14,

---

[1]     The state charged Petitioner with related offenses in <u>State v. McGhee</u>, No. 2012–CF–1743 (Fla. 4th Cir. Ct.), and <u>State v. McGhee</u>, No. 2012–CF–1809 (Fla. 4th Cir. Ct.). The cases

2012, the State charged Petitioner by Information with two counts: (1) possession of a firearm by a convicted felon, in violation of Florida Statutes Sections 790.23(1)(a) and 775.087(2)(a)(1) (2011); and (2) aggravated assault with a deadly weapon, "to wit: [a] firearm," in violation of Florida Statutes Sections 784.021(1)(a) and 775.087(2)(a)(1) (2011).[2] (See Resp. Ex. 1 at 9, Information).[3] The charges stemmed from an incident in which Petitioner pointed what looked like a semi-automatic pistol at the victim, with whom Petitioner was having an "on-going dispute." (Id. at 6).

The case proceeded to a jury trial in June 2014. (Resp. Exs. 3, 4). The victim, Mushin al-Shaibani, testified that Petitioner used to loiter in front of Shaibani's seafood market and that the two men had a running dispute. (Resp. Ex. 3 at 29–33). Shaibani testified that on the morning of November 1, 2011, while he was picking up an employee from an apartment complex near the seafood market, Petitioner approached his parked van and pointed a "gun" at his head. (Id. at 33–39). Shaibani's windows were down. (Id. at 36). Petitioner demanded that Shaibani hand over his gun, but Shaibani responded that he did

---

were consolidated for trial and tried before the same jury. (See Resp. Ex. 1 at 11–13; Resp. Ex. 2 at 28–31).

[2]      Section 784.021(1)(a) defines aggravated assault with a deadly weapon. Section 775.087(2)(a)(1), part of Florida's "10-20-life" law, imposes certain mandatory minimum sentences on anyone who possesses a firearm while committing a listed felony.

[3]      Unless otherwise indicated, record citations refer to the Bates-stamp page number at the bottom-center, or if not available, the page number in the upper right-hand corner.

not have a gun with him. (Id. at 38). When Petitioner continued to press him, Shaibani reacted by opening the van door, shoving the door into Petitioner with all his might, and punching Petitioner in the face. (Id. at 38–39). Petitioner was holding the gun within a foot of Shaibani's head when he opened the door. (Id. at 39).

Shaibani, who owned two handguns of his own (id. at 56–57), said the "gun" resembled a 9 mm pistol (id. at 39). He described the gun as a "black, old one … [b]ecause what you call – the space where he shoot, he shoot – I see, like, it's messed up, like, too many, like, shooting, like somebody use it a lot." (Id. at 39). The force of Shaibani's blow caused Petitioner to drop the object. (See id. at 40). Shaibani was certain it was a gun because it sounded "heavy" when it hit the ground. (Id. at 39–40). Shaibani struck Petitioner again, got back in his van, and drove away. (Id. at 40). As he sped off, Shaibani heard Petitioner exclaim that he would "f' [Shaibani] up." (Id. at 41).

Shaibani testified about two subsequent incidents involving Petitioner and the same alleged gun. Once, Petitioner pointed the gun into Shaibani's store and aimed it at him. (Id. at 43–46). On another occasion, Petitioner displayed the gun but kept it pointed at the ground. (Id. at 46–48).

The jury ultimately found Petitioner guilty of aggravated assault with a deadly weapon, but it specially found that he did not possess a firearm while committing the offense. (Resp. Ex. 1 at 15, Verdict). The jury did not convict

Petitioner of other charges relating to aggravated assault, aggravated stalking, and possession of a firearm by a convicted felon. (See Resp. Ex. 2 at 28–31).

After the jury returned the verdicts, defense counsel moved to arrest judgment on the aggravated assault charge, to reduce the conviction to simple assault (a second-degree misdemeanor), and to dismiss one of the firearm-possession charges. (Resp. Ex. 1 at 16–18). Counsel argued that by finding Petitioner guilty of aggravated assault with a deadly weapon while also finding that Petitioner did not possess a firearm, the jury rendered inconsistent verdicts under Gerald v. State, 132 So. 3d 891 (Fla. 1st DCA 2014). The circuit court judge held a hearing on the motion (Resp. Ex. 1 at 37–99) and granted it "to the extent stated on the record, as required by the binding legal precedent of Gerald v. State, 132 So. 3d 891 (Fla. 1st DCA Feb. 13, 2014)." (Id. at 19). The judge reduced Petitioner's conviction to simple assault and sentenced him to 60 days in county jail with credit for time served. (Id. at 23–28).

The State appealed the trial court's ruling under Florida Rule of Appellate Procedure 9.140(c)(1). (Resp. Exs. 6, 7, 8). The First District Court of Appeal reversed the trial court in a written opinion. State v. McGhee, 174 So. 3d 470 (Fla. 1st DCA 2015); (Resp. Ex. 8). The First DCA ruled that Petitioner's case differed from Gerald v. State and that the jury's verdicts were not truly inconsistent. The court reasoned:

"An inconsistent verdicts claim presents a pure question of law and is reviewed de novo." Gerald, 132 So. 3d at 892 (quoting Brown v. State, 959 So.2d 218, 220 (Fla.2007)). In Gerald, as here, the jury convicted the defendant of aggravated assault with a deadly weapon and made a special finding that the defendant did not actually possess a firearm. The trial court denied Mr. Gerald's motion for new trial, but on appeal this court reversed because it found a true inconsistency between the guilty verdict and the special finding because the only weapon in the case was a firearm. "[W]e are left with the jury's finding, beyond a reasonable doubt, that Appellant did not actually possess the firearm during the aggravated assault, which negates the critical element that elevates simple assault to aggravated assault. This is a true inconsistent verdict...." Id. at 894. See also Starling v. State, 152 So.3d 868 (Fla. 1st DCA 2014).

Similar to Gerald, the issue in this case is whether the jury's special finding regarding the presence of a firearm negated the element of aggravated assault requiring a deadly weapon. See § 784.021(1)(a), Fla. Stat. (2014) (defining aggravated assault as an assault "[w]ith a deadly weapon without intent to kill"). Here, unlike Gerald, there was a dispute at trial regarding the nature of the deadly weapon involved. For statutory purposes, a "deadly weapon" needn't be a firearm; it is simply an object used or threatened to be used in a way likely to produce death or great bodily harm. See J.L. v. State, 60 So.3d 462, 464 (Fla. 1st DCA 2011). And in this case, defense counsel openly questioned the victim's testimony about seeing a firearm as opposed to some other object:

> What you have is the word of a man says that looked like a gun [sic], and by the way, when this person is standing 20 feet away from me, I can see that it's an old gun with scratches and imperfections in the barrel. But even more incredibly, it sounded like a gun when I opened the door and it dropped, not into my van but outside.

(Emphasis added). He also questioned the physical capacity of the witness to have identified a firearm:

> [The victim] told you several times that obviously these were stressful situations for him that he's alleging, that his diabetes, his high blood pressure acts up, and at times, he says he loses it. I tried to explore that with him and ask him, what do you mean by losing it? Do you mean vision problems? He denied that. Do you mean memory problems? He denied that.

5

The State's closing argument further acknowledged a dispute over the nature of the weapon, as to whether it was a firearm or something else:

> And in this case, once again, ladies and gentlemen, you brought in your common sense, and this defendant threatened to use whatever he had in his hand. And once again, the State is alleging—the State submits to you that based on the victim's testimony, it was a real firearm. <u>But no matter what it was, he was certainly using it in a way to threaten to make it look like a real firearm.</u>

(Emphasis added). The case before the jury in this case was therefore different from <u>Gerald</u>, because of the disputed nature of the weapon involved.

A second reason <u>Gerald</u> doesn't control in this case is because the trial court here instructed the jury on both aggravated assault <u>and</u> the lesser included offense of simple assault. The jury in <u>Gerald</u> wasn't presented both of these options. Given the options here, the jury convicted Mr. McGhee of aggravated assault, the primary offense, but additionally found that "the Defendant did not actually possess a firearm during the commission of [the aggravated assault]." There is nothing inconsistent about the jury's verdict. Apparently, it determined that the firearm-looking weapon used by Mr. McGhee to commit the offense was not actually a firearm, a finding well within the scope of the parties' arguments about the disputed weapon.

<u>McGhee</u>, 174 So. 3d at 471–72 (emphases in original). The First DCA remanded the case for the trial court to reinstate the jury's aggravated assault verdict and to proceed with sentencing. <u>Id.</u> at 472.

On remand, the trial court reinstated the aggravated assault conviction and sentenced Petitioner to a term of 10 years in prison as a habitual felony offender (HFO). (Resp. Ex. 10 at 194–95; Resp. Ex. 11; Resp. Ex. 12 (Judgment)); <u>see also</u> Fla. Stat. § 775.084(4)(a) (HFO statute). Petitioner moved for a new trial. (Resp. Ex. 13). He argued that the jury's verdict was "contrary

to the weight of the evidence and the law" because "[t]he only deadly weapon alleged to have been used during the November 1, 2011 assault was a firearm," the State "produced no evidence to corroborate the victim's testimony" that Petitioner threatened him with a deadly weapon, and the jury found that Petitioner did not possess a firearm. The trial court denied the motion. (<u>Id.</u>).

Petitioner appealed the new judgment and sentence to the First DCA. <u>McGhee v. State</u>, No. 1D16–2452 (Fla. 1st DCA). He argued that the evidence could not sustain the conviction for aggravated assault because the State did not allege that Petitioner committed the assault with anything besides a firearm and the State failed to prove that Petitioner used a firearm, as reflected by the jury's special verdict. (Resp. Ex. 14 at 16–22 (appellant's initial brief); <u>see also</u> Resp. Ex. 16 at 1–10 (appellant's reply brief)). The State countered that Petitioner failed to preserve these specific arguments. (Resp. Ex. 15 at 7–9). Addressing the merits, the State argued that the Information's reference to a firearm was surplusage, and that to prove aggravated assault with a deadly weapon, the State did not have to prove that Petitioner used a firearm. (<u>Id.</u> at 10–11). Instead, the State had to prove only that Petitioner used a "deadly weapon" – a term that encompasses more than firearms – which the testimony was sufficient to establish. (<u>Id.</u> at 11–15). The First DCA per curiam affirmed Petitioner's conviction and sentence without a written opinion. <u>McGhee v. State</u>, 232 So. 3d 976 (Fla. 1st DCA 2017); (Resp. Ex. 17 at 1).

7

Afterward, Petitioner sought other forms of relief, including a belated petition to the Florida Supreme Court for discretionary review of the First DCA's 2015 opinion (Resp. Ex. 18); a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel (Resp. Ex. 23); and a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a) (Resp. Ex. 25 at 1–4). Each request ultimately failed. This federal habeas corpus Petition followed.

### III.   Governing Legal Principles

#### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter,

562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See,

e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.; see also 28 U.S.C. § 2254(e)(2). The pertinent facts are fully developed in the record. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), it will not conduct an evidentiary hearing.

## IV.   Petitioner's Claims and Analysis

Nominally, Petitioner raises one ground in his Petition. He argues that the First DCA's 2015 opinion reinstating his aggravated assault conviction allowed the trial court to violate his rights under the Fifth and Fourteenth

Amendments. <u>See</u> Petition at 3, 4.[4] In support of his single overarching claim, Petitioner appears to raise five subclaims, but these are not a model of clarity.

First, Petitioner argues that the First DCA's 2015 opinion subjected him to double jeopardy, in violation of the Fifth and Fourteenth Amendments, by allowing him to be sentenced twice for the same offense (presumably referring to the 60-day jail sentence for simple assault before the State's appeal, followed by the 10-year prison sentence for aggravated assault after the State's appeal). <u>See</u> <u>id.</u> at 7–8. Second, Petitioner argues that the jury returned inconsistent verdicts, violating his right to due process. <u>See</u> <u>id.</u> at 9–10, 12–14. Third, and relatedly, he seems to argue that the jury's finding that he did not possess a firearm establishes that the evidence was insufficient under <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), to support the conviction for aggravated assault with a deadly weapon. <u>See</u> <u>id.</u> Fourth, Petitioner appears to argue that the First DCA's 2015 opinion was incorrect and a misapplication of Florida law. <u>Id.</u> at 15–16. Finally, Petitioner argues that the theory of guilt the State advanced at trial varied from the Information and violated an agreement about the aggravated assault charge. <u>See</u> <u>id.</u> at 9–12, 16. According to Petitioner, the State agreed before and during trial that the only "deadly weapon" involved was

---

[4]     Petitioner references the Equal Protection Clause in passing, but he does not develop an equal protection claim. Thus, the Court will not address it further.

a firearm. See id. at 7, 9, 16 (citing Pet. Exs. C, H, I)[5]; (see also Resp. Ex. 4 at 240–48).[6] Petitioner contends that the State violated his right to due process when it later argued to the jury that the "deadly weapon" could have been something other than a firearm. Because the jury concluded that no firearm was involved, Petitioner contends he should not have been convicted of aggravated assault with a deadly weapon.

### A. Double Jeopardy

In his Reply brief, Petitioner withdraws the double jeopardy claim. Reply at 2. Thus, the Court will not consider it further. In the Reply, Petitioner also tries to raise a claim that the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose evidence favorable to the defense. Reply at 1. Because a party may not raise new claims for the first time in a reply brief, and because Petitioner did not seek leave to amend the Petition to add the Brady claim, the Court will not consider it. See Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) (a claim raised for the first time in the reply brief was waived); Snyder v. United States, 263 F. App'x 778, 779–80 (11th Cir. 2008).

---

[5]    Petitioner cites his Exhibit C for the proposition that the State agreed during a pretrial hearing to pursue a "firearm-only" theory of the aggravated assault charge. Petition at 9. But Exhibit C, which appears to be a single page taken from an unknown legal brief describing the First DCA's 2015 opinion in McGhee, does not support this proposition.

[6]    Petitioner's Exhibits H and I are transcript excerpts of the charging conference held on June 24, 2014. These exhibits contain highlighter markings, which made them illegible after being scanned. The same discussion is found on pages 240 to 248 of Respondents' Exhibit 4.

## B. State Law Claim

To the extent Petitioner argues that the First DCA's 2015 opinion in <u>State v. McGhee</u>, 174 So. 3d 470, incorrectly applied state law, federal habeas relief is unavailable. "[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on the merits." <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997). Moreover, habeas corpus relief is available "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "a violation of state law is not a ground for federal habeas relief." <u>Hendrix v. Sec'y, Fla. Dep't of Corr.</u>, 527 F.3d 1149, 1153 (11th Cir. 2008) (citing <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)).

## C. Exhaustion and Procedural Default

To the extent Petitioner argues that his federal constitutional rights were violated, Respondents argue that Petitioner failed to exhaust these claims because Petitioner raised no federal constitutional claims with the state court on direct appeal. Response at 6–9. The Court agrees.

As for exhaustion, the United States Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court

13

with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004). "The Supreme Court has suggested that a petitioner can exhaust his claim by, for example, including the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim as a federal one." <u>Preston v. Sec'y, Fla. Dep't of Corr.</u>, 785 F.3d 449, 457 (11th Cir. 2015) (internal quotation marks and alterations omitted) (quoting <u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351 (11th Cir. 2012)). "Of course, a petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts." <u>Id.</u> "It is not, however, 'sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made.'" <u>Id.</u> (quoting <u>Lucas</u>, 682 F.3d at 1343–44). "The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." <u>Id.</u>

Petitioner did not do that in this case. Although he challenged the sufficiency of the evidence and appealed the denial of his motion for a new trial, he did not frame the arguments as arising under the Fifth or Fourteenth Amendments, as he does here. Instead, he framed the arguments as arising only

14

under state law. (See Resp. Ex. 14 (appellant's initial brief) at 16–22). He cited no provision of the United States Constitution, no United States Supreme Court decision, and no other source of federal law, nor did he label the claim as a federal one. In his reply brief on direct appeal, Petitioner did cite two United States Supreme Court decisions in passing. (Resp. Ex. 16 (appellant's reply brief) at 3 (citing Thornhill v. Alabama, 310 U.S. 88 (1940)); id. at 4 (citing Berger v. United States, 295 U.S. 78 (1935))). But this did not preserve a federal constitutional claim because "an issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief." J.A.B. Enterprises v. Gibbons, 596 So. 2d 1247, 1250 (Fla. 4th DCA 1992); see also Hoskins v. State, 75 So. 3d 250, 257 (Fla. 2011) (ineffective assistance claim raised for the first time in a reply brief was barred (citing Hall v. State, 823 So. 2d 757, 763 (Fla. 2002))). Petitioner therefore did not exhaust any federal constitutional claims in state court because he did not fairly alert the First DCA that he was raising any federal claims. See Preston, 785 F.3d at 457.

Such claims are now procedurally defaulted because they would be procedurally barred if Petitioner returned to state court to exhaust them. See Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007). Under Florida law, a defendant cannot raise a claim in a post-conviction motion if it could have been raised on direct appeal. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been

raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); see also State v. Larzelere, 979 So. 2d 195, 207–08 (Fla. 2008) (claim that prosecutor's arguments constructively amended or varied from indictment should have been raised on direct appeal); Lightbourne v. State, 471 So. 2d 27, 28 (Fla. 1985) (challenge to sufficiency of the evidence should have been raised on direct appeal). Because Petitioner could have raised his Fifth and Fourteenth Amendment claims on direct appeal after the reinstatement of the aggravated assault conviction, and he did not do so, these claims are procedurally defaulted.

Indeed, Petitioner seems to concede that he failed to present the claims in his Petition as federal constitutional claims in state court. See Petition at 7 (acknowledging that his arguments were "not explicated as [they are] in this Petition."). Still, he argues that he can overcome the procedural default by satisfying the cause-and-prejudice standard. Id.[7] "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez v. Ryan, 566 U.S. 1, 10 (2012).

> For purposes of the "cause and prejudice" method of overcoming a procedural bar, a petitioner shows sufficient cause if he can demonstrate "that some 'objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" External impediments sufficient to constitute cause "include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel."

---

[7] Petitioner does not invoke the miscarriage-of-justice/ actual innocence exception, so the Court does not address it.

<u>Owen v. Sec'y, Fla. Dep't of Corr.</u>, 568 F.3d 894, 908 (11th Cir. 2009) (citations omitted). "As to the prejudice requirement, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." <u>Id.</u> (internal quotation marks and citation omitted).

Although Petitioner alleges, in conclusory fashion, that he can satisfy the cause-and-prejudice standard, he does not develop that claim. Petition at 7. He does not allege specific facts showing what objective external factor prevented him from exhausting his federal constitutional claims in state court or how he was prejudiced. Petitioner has thus failed to show he can overcome the procedural default. For these reasons, Petitioner's federal claims are unexhausted, procedurally defaulted, and due to be denied.

### D. Merits

Alternatively, Petitioner's federal claims fail on the merits.

#### 1. Inconsistent Verdicts

To the extent Petitioner argues that the jury returned allegedly inconsistent verdicts, in violation of his right to due process, the Court must defer to the First DCA's conclusion in <u>McGhee</u>, 174 So. 3d 470, that the verdicts were not inconsistent under Florida law. <u>See</u> <u>Agan</u>, 119 F.3d at 1549 (state courts are the final arbiters of state law). And even if the verdicts were

inconsistent, any argument that the error violated his federal due process rights "would fail because the Supreme Court has said many times that inconsistent jury verdicts resulting in a conviction are not unconstitutional." Senelus v. Att'y Gen., Fla., 806 F. App'x 806, 808 (11th Cir. 2020) (citing Dowling v. United States, 493 U.S. 342, 353–54 (1990); United States v. Powell, 469 U.S. 57, 65, 69 (1984); Harris v. Rivera, 454 U.S. 339, 345 (1981); Dunn v. United States, 284 U.S. 390, 393 (1932)).

### 2. *Sufficiency of the Evidence*

To the extent Petitioner contends the evidence was constitutionally insufficient to sustain his conviction, that claim fails as well. In Jackson v. Virginia, the Supreme Court held that due process under the Fourteenth Amendment means "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." 443 U.S. at 316. The critical inquiry is "not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318. The evidence is sufficient when, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original) (citation omitted).

Under Florida law, "[a]n 'aggravated assault' is an assault … [w]ith a deadly weapon without intent to kill." Fla. Stat. § 784.021(1)(a). The elements of aggravated assault with a deadly weapon are:

> (1) the defendant intentionally and unlawfully threatened, either by word or act, to do violence to the victim, (2) at the time, the defendant appeared to have the ability to carry out the threat, (3) the act of the defendant created in the mind of the victim a well-founded fear that violence was about to take place, and (4) the assault was with a deadly weapon.

Howard v. State, 245 So. 3d 962, 963 (Fla. 1st DCA 2018).

Petitioner does not contest the first three elements; he disputes only whether the assault involved a "deadly weapon." He argues the offense could not have involved a deadly weapon because the jury found that he did not possess a firearm. But under Florida law, "a 'deadly weapon' needn't be a firearm; it is simply an object used or threatened to be used in a way likely to produce death or great bodily harm." McGhee, 174 So. 3d at 471 (citing J.L. v. State, 60 So. 3d 462, 464 (Fla. 1st DCA 2011)). "Whether an item is a deadly weapon is a factual question to be determined under the circumstances, taking into consideration its size, shape, material, and the manner in which it was used or was capable of being used." D.B.B. v. State, 997 So. 2d 484, 485 (Fla. 2d DCA 2008) (citation omitted). Thus, a "deadly weapon" could be a BB gun, Dale v. State, 703 So. 2d 1045, 1047 (Fla. 1997), a rock, Ricks v. State, 224 So. 2d 413, 414 (Fla. 3d DCA 1969), an inoperable pistol, Warren v. State, 332 So. 2d

361, 362 (Fla. 3d DCA 1976), or an unloaded gun in its capacity as a bludgeon, <u>Dawson v. State</u>, 338 So. 2d 242, 243 n.2 (Fla. 3d DCA 1976).

Here, the evidence was sufficient for a rational juror to conclude that Petitioner committed the assault with a deadly weapon. At trial, the victim, Mushin al-Shaibani, testified that while he was picking up an employee for work, he saw Petitioner approaching his parked van. (Resp. Ex. 3 at 36–37). Shaibani's windows were down. (<u>Id.</u> at 36). Petitioner was hunched over with his hand behind his back, as if he were concealing something. (<u>Id.</u> at 37). When Petitioner was within a few feet of Shaibani, he drew what Shaibani described as a gun. (<u>Id.</u> at 38). Petitioner pointed the "gun" at Shaibani's head and demanded that Shaibani turn over his firearm. (<u>Id.</u> at 38–39). Shaibani responded that he did not have a gun on him, but Petitioner did not believe him. (<u>Id.</u> at 38). Shaibani testified that he had a clear view of the object in Petitioner's hand, which Petitioner held only a foot from Shaibani's head. (<u>Id.</u> at 39). According to Shaibani, who owned two handguns of his own (<u>id.</u> at 56–57), the object looked like an old, but real, pistol (<u>id.</u> at 39–40). Shaibani further testified that when Petitioner dropped the object, it sounded like a "[g]un, solid gun. The gun be heavy." (<u>Id.</u>). During closing arguments, the prosecution argued without objection that the object could have been a deadly weapon other than a firearm. (Resp. Ex. 4 at 327–28). The judge instructed the jury on the meaning of both a "deadly weapon" and a "firearm" before it began deliberations. (<u>Id.</u> at 382).

Shaibani's testimony was sufficient for the jury to conclude that Petitioner committed the assault using a deadly weapon. Even though the jury did not find that the object was a firearm, it reasonably could have concluded it was a pellet gun or a bludgeoning object and that it was a deadly weapon considering how Petitioner held it to the victim's head. See Dale, 703 So. 2d at 1047; Dawson, 338 So. 2d at 243 n.2. Although Petitioner complains that the State did not introduce the object for the jury to inspect, Reply at 2–3, the State did not have to do so. The State may prove that a defendant used a deadly weapon through circumstantial evidence. See Smith v. State, 645 So. 2d 124, 126 (Fla. 1st DCA 1994) ("The state may prove that a defendant carried, displayed, used, threatened, or attempted to use a weapon during the commission of a felony by means of circumstantial evidence." (citations omitted)); see also Martin v. State of Ala., 730 F.2d 721, 725 (11th Cir. 1984) (noting that the Jackson standard applies equally to direct and circumstantial evidence). Shaibani's description of the weapon, based on firsthand observation, was constitutionally sufficient to allow a rational juror to conclude that Petitioner committed the assault with a deadly weapon.

### 3. *Improper Variance*

Petitioner argues that the State violated his right to due process because the theory of guilt it advanced at trial varied from the Information and contradicted an agreement the State allegedly made about the deadly weapon.

21

In Count 2 of the Information, the State alleged that Petitioner committed aggravated assault with a deadly weapon, "to wit: [a] firearm," in violation of Florida Statutes Section 784.021(1)(a) (the aggravated assault statute) and Section 775.087(2)(a)(1) (the "10-20-life" statute). (Resp. Ex. 1 at 9). According to Petitioner, the State agreed before and during trial that the only deadly weapon it accused Petitioner of using was a firearm. Petition at 7, 9, 16 (citing Pet. Exs. C, H, I); (see also Resp. Ex. 4 at 240–48).[8] During closing arguments, the State maintained that Petitioner threatened the victim with a gun. (Resp. Ex. 4 at 326–27, 334–35). But the State also argued – without objection – that "no matter what it was," the jury could find that the object was a "deadly weapon" because Petitioner "threatened to use whatever he had in his hand" and "was certainly using it in a way to threaten to make it look like a real firearm, to threaten the victim's life." (Id. at 327–28). Petitioner argues that in doing so, the State varied from the Information and violated the purported agreement. Because the jury concluded that Petitioner did not possess a firearm, he claims he should not have been convicted of aggravated assault with a deadly weapon.

"An accused has a constitutional right to an indictment which puts him on notice of the case the prosecution will present at trial." Thompson v. Nagle,

---

[8]      See page 12, footnotes 5–6, supra.

118 F.3d 1442, 1453 (11th Cir. 1997) (citations omitted). "A variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same." United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990). "The Eleventh Circuit has established a two-step inquiry when considering allegations of variance between indictments and proof at trial. 'First, we must determine whether a material variance did indeed occur; and second, whether [the defendant] suffered substantial prejudice as a result of the variance.'" Thompson, 118 F.3d at 1453 (quoting United States v. Starrett, 55 F.3d 1525, 1553 (11th Cir. 1995)). Substantial prejudice occurs if "the proof at trial differs so greatly from the charges … that the defendant is unfairly surprised and has an inadequate opportunity to prepare a defense." United States v. Coy, 19 F.3d 629, 634 (11th Cir. 1994) (citations omitted).

Here, there was no material variance between the evidence at trial and the aggravated assault charge in Count 2 of the Information. The State charged that Petitioner committed aggravated assault with a deadly weapon, "to wit: [a] firearm." (Resp. Ex. 1 at 9). As one Florida court explained, possession of a firearm is not an element of aggravated assault with a deadly weapon and the mention of a firearm in the "to-wit" section of the charge is surplusage:

> The appellant argues that because the state alleged in the information that the weapon used was "to-wit: a firearm...handgun...." the state was required to prove that the weapon complied with the statutory definition of a "firearm" found in section 790.001(6), Florida Statutes (1985). The insertion of this language in the information, possibly for the purpose of

> determining whether the statutory mandatory minimum applied, is surplusage as it is not an element of aggravated assault. <u>Mas v. State</u>, 222 So. 2d 250 (Fla. 3d DCA 1969). Therefore, it does not matter whether a projectile would be propelled from the gun by means of an "explosive."
>
> We find that a BB gun is a weapon that possesses the capability of inflicting great bodily harm and that the trial court did not err in denying defendant's motion for judgment of acquittal.

<u>In Interest of W.M.</u>, 491 So. 2d 1263, 1264 (Fla. 4th DCA 1986); <u>see also</u> <u>Ricks</u>, 224 So. 2d at 414 (finding no fatal variance between the information and the proof where the defendant was charged with committing aggravated assault with a brick but the evidence showed he used a rock); <u>Mas</u>, 222 So. 2d at 251–52 (sustaining conviction for throwing a deadly missile, despite lack of proof that the missile was a "firebomb" as alleged in the "to-wit" section of the information, because the "to-wit" language was surplusage). Moreover, Count 2's reference to a firearm does not appear intended to limit the meaning of a "deadly weapon" for purposes of proving the aggravated assault charge. Instead, the reference to a firearm appears intended to satisfy the requirements of Section 775.087(2)(a)(1), the "10-20-life" law, which requires the possession of a firearm during the commission of a listed felony to trigger the law's mandatory minimum prison sentences. <u>See</u> Fla. Stat. § 775.087(2)(a)(1) (2011). Indeed, Count 2 cites Section 775.087(2)(a)(1). (Resp. Ex. 1 at 9). Thus, while the Information referenced a firearm, the State did not materially vary from the aggravated assault charge by arguing that Petitioner could have wielded a deadly weapon other than a firearm.

Petitioner also claims the State agreed that if there was no firearm then there was no "deadly weapon." Petition at 7, 9, 16. That is untrue. Petitioner points to transcript excerpts from the charging conference held on June 24, 2014. The transcript reflects a discussion among the judge, the prosecutor, and defense counsel about the verdict form for the charge of aggravated stalking. (Resp. Ex. 4 at 240–48). Defense counsel objected to the inclusion of special findings about whether Petitioner used a weapon or a deadly weapon, arguing that only a firearm was alleged. (Id. at 240). The State consented to removing the special findings about a weapon or a deadly weapon. (Id. at 241). But soon after, the State withdrew that consent and clarified: "It's the State's contention that even if the jury were to determine that it was not an actual firearm, they could certainly find that it was a replica firearm, a pellet pistol, something of that sort, which would constitute a weapon." (Id. at 242–43).

Contrary to Petitioner's claim, the State did not agree that the only way it could prove the charge of aggravated assault with a deadly weapon was to prove that Petitioner possessed a firearm. The portion of the charging conference that Petitioner cites focused on the verdict form for aggravated stalking, not aggravated assault. Defense counsel did not object to the jury instructions or the verdict form for aggravated assault. (Id. at 232–33, 239–40). To the extent the parties discussed the verdict form for aggravated assault, the judge understood that the special finding about whether Petitioner possessed a

firearm was relevant to the 10-20-life law. (Id. at 247). And the State clarified its position that an object other than a firearm could be a weapon or a deadly weapon. (Id. at 243). The State never agreed that if there was no firearm then it could not satisfy the "deadly weapon" element of aggravated assault.

In any event, the State's closing argument – that the object could have been a deadly weapon even if it was not a firearm – did not cause Petitioner to suffer "substantial prejudice." Thompson, 118 F.3d at 1453. The State did not surprise Petitioner in terms of what object constituted the alleged "deadly weapon": it was the object that Petitioner pointed at the victim's head during the assault on November 1, 2011, even if its exact nature was disputed. Petitioner did not object or seem caught off-guard when the State argued that the object could have been a deadly weapon other than a firearm. (See Resp. Ex. 4 at 327–28). Petitioner's defense mainly revolved around the victim's credibility, misidentification, and an alibi, not whether the object was a "deadly weapon." (See id. at 342–60). The State's argument neither surprised Petitioner nor prevented him from mounting a defense. Because the State did not materially vary from the Information, breach any agreement, or prejudice Petitioner, it did not violate Petitioner's right to due process.

## V.   **Conclusion**

The Court has reviewed each of Petitioner's claims and finds that none warrants relief under 28 U.S.C. § 2254. Accordingly, it is hereby **ORDERED:**

1. Petitioner Jaloni McGhee's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE.**

2. The Clerk shall enter judgment accordingly, terminate any pending motions, and close the file.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability (COA). Because the Court has determined that a COA is not warranted, the **Clerk** will terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed. Such termination will serve as a denial of the motion.[9]

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of August, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

lc 19
Copies:
Parties and counsel of record

---

[9]    The Court should issue a COA only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). After consideration of the record as a whole, the Court will deny a COA.